Brent E. Johnson (Bar. No. 7558)
Jennifer L. Lange (Bar No. 8470)
Robert S. Fox (Bar No. 10191)
HOLLAND & HART LLP
60 East South Temple, Suite 2000
Salt Lake City, Utah 84111-1031
Telephone: (801) 595-7800
Fax: (801) 364-9124

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| ARTIFICIAL NAIL TECHNOLOGIES, INC., a Utah corporation and TRUE FIT NAILS, LLC a Utah limited liability company;<br><br>　　　Plaintiffs,<br><br>vs.<br><br>FLOWERING SCENTS, LLC, a Nevada limited liability company; SEVEA INTERNATIONAL, INC., a Nevada corporation; MICHAEL MACRIS, an individual; CHRISTINA MCNALLY, an individual; and CRAIG GIFFORD, an individual;<br><br>　　　Defendants. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY VAN COTT BAGLEY CORNWALL & MCCARTHY FROM REPRESENTING DEFENDANTS IN THIS MATTER**<br><br>Civil Action No. 2:06-cv-609<br><br>Judge Dale A. Kimball |

Plaintiffs Artificial Nail Technologies, Inc. and True Fit Nails, LLC (collectively "Plaintiffs" or "ANT") by and through counsel, move the Court to disqualify the law firm of Van Cott Bagley Cornwall & McCarthy ("Van Cott") from representing any of the defendants in this

lawsuit as a result of Van Cott's clear conflict of interest pursuant to Rules 1.7 and 1.9 of the Utah Rules of Professional Conduct.

## **INTRODUCTION**

ANT is a company that designs, manufactures, and sells state-of-the-art artificial nails that are custom made and precision fit to a customer's unique fingernail anatomy.  In an effort to expand its marketing capabilities, ANT entered into an Asset Contribution Agreement (the "ACA") (attached hereto as Exhibit A) with Flowering Scents, LLC ("Flowering Scents"), a Nevada multi level marketing company managed by Michael Macris and Christina McNally.  Under the ACA, ANT and Flowering Scents each agreed to transfer substantially all of their assets into a newly formed entity, Sevea, in exchange for equity in Sevea.  Van Cott represented ANT and Scott Nielson (ANT's Chief Executive Officer and President) in the transaction between ANT and Flowering Scents.  *See* Affidavit of Scott Nielson, attached hereto as Exhibit B at ¶ .  Specifically, Van Cott assisted Mr. Nielson, ANT, and Flowering Scents in the preparation, review, revision, and approval of a Private Placement Memorandum ("PPM") (attached hereto as Exhibit C) and the ACA.

Despite entering into the ACA, no contribution or exchange of equity took place between ANT, Flowering Scents, and Sevea as required pursuant to the terms of the ACA.  Specifically, ANT never received any shares of Sevea common stock or any other consideration for its assets, and Sevea refused to return the assets, which prompted this litigation.

## FACTS

1.   Van Cott undertook representation of ANT and Flowering Scents in the preparation, review, revision, and approval of the PPM and ACA, representing both parties to the transaction.  Van Cott's representation of ANT is evidenced by the following:

· Van Cott's numerous conferences both via telephone and in person with Scott Nielson, ANT's Chief Executive Officer and President, regarding the ACA and PPM.

· Michael Macris' statement to Mr. Nielson that Van Cott would represent ANT, Flowering Scents, and Sevea in the merger transaction in the presence of John Snow without any objection from Mr. Snow.

· Michael Macris' statement to Mr. Nielson and Justin Williams at a meeting where the parties were negotiating and drafting employment and distributorship agreements that ANT and Flowering Scents were on the same team and that Van Cott would represent ANT, Flowering Scents, and Sevea in the merger transaction.  James Farmer and Mark Wagner, both Van Cott attorneys, were present at this meeting and neither of them objected to Mr. Macris' statement.

· John A. Snow's (an attorney at Van Cott) referral of Scott Nielson to Van Cott attorneys Ruth Hawe and James Farmer for tax and intellectual property advice related to the merger transaction.

· James Farmer's telephone call to Holland & Hart, specifically H. Matthew Horlacher, suggesting that Holland & Hart step in and represent ANT when negotiations broke down between the parties.

See Affidavit of Scott Nielson (Ex. B).

2. Van Cott did not obtain written informed consent from ANT and Flowering Scents at the beginning of its concurrent representation of the parties to act as counsel on both sides of the transaction. *See* Nielson Aff. (Ex. B).

3. ANT, Flowering Scents, and Sevea have been in engaged in ongoing negotiations since February 2006 regarding various details and provisions of the ACA and PPM.

4. Eventually, negotiations broke down between the parties and Sevea and Flowering Scents' principals terminated the transaction. Van Cott threatened to sue ANT via letter dated June 20, 2006 from James R. Farmer to H. Matthew Horlacher (attached hereto as Exhibit D ) and then again on July 14, 2006 via letter from John A. Snow to Brent E. Johnson (attached hereto as Exhibit E).

5. As counsel to Justin Williams (a shareholder, director, and officer of ANT), Holland & Hart LLP notified Van Cott of its conflict of interest, and requested that Van Cott evaluate its participation in the negotiations between ANT, Flowering Scents, and Sevea via letter from Brent E. Johnson to John A. Snow dated July 12, 2006, attached hereto as Exhibit F.

6. Van Cott denies that it represented Scott Nielson. *See* Ex. E.

7. Van Cott continues to represent Flowering Scents and Sevea, and has not obtained written informed consent from ANT to represent Flowering Scents or Sevea in this litigation or the litigation that Flowering Scents and Sevea filed against ANT in this Court on July 27, 2006 (the "Flowering Scents Litigation") (attached to the Motion for Disqualification as Exhibit A).

## ARGUMENT

### A.     This Court has Authority to Disqualify Van Cott.

This Court has the inherent power to disqualify counsel in order to control the conduct of the attorneys who practice before it, preserve the integrity of its judgment, maintain public confidence in the integrity of the bar, eliminate conflicts of interest, prevent injustice, and to preserve the sacred nature of the attorney-client relationship.  *Houghton v. Dep't of Health,* 962 P.2d 58, 61 (Utah 1998); *Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997); *Beck v. Board of Regents of Kansas*, 568 F. Supp. 1107, 1110 (D. Kan. 1983).  Disqualification is a fact-intensive determination that must be made according to the circumstances of each case with questions or doubts generally resolved in favor of disqualification.  *See Engineered Prods. Co. v. Donaldson Co., Inc.,* 290 F. Supp.2d 974, 980 (N.D. Iowa 2003); *Brown v. Eighth Judicial Dist. Ct.,* 14 P.3d 1266, 1270 (Nev. 2000); *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp.2d 518 (E.D.Pa. 1999); and *Biocore Med. Tech., Inc. v. Khosrowshahi,* 181 F.R.D. 660 (D. Kan. 1998).  Here, Van Cott has a conflict of interest under Rules 1.7 and 1.9 of the Utah Rules of Professional Conduct that requires its disqualification from representing the defendants in this case.  In addition, Van Cott filed the Flowering Scents Litigation against ANT, Scott Nielson, and others on July 27, 2006.  ANT has not been served in that litigation, but would argue disqualification in that case for the same reasons presented here.

Although disqualification is a serious sanction, "'[w]here an attorney's conflict of interest undermines the court's confidence in the vigor of his representation of the client, the court may disqualify the attorney.'"  *City Consumer Serv., Inc. v. Horne,* 571 F. Supp. 965, 970 (D. Utah 1983) (citations omitted).  The main issue to be determined "is whether the alleged misconduct"

5

will taint the trial.  *Smith v. Daggett County Board of Educ.,* 650 F. Supp. 44, 47 (D. Utah 1986).  Van Cott's conflict of interest not only taints the legal process, but it fails to pass the "smell test" of public scrutiny.

The Utah Supreme Court has emphasized the importance of preserving "society's perception of the integrity of our legal system" which "engenders public confidence that justice will be dispensed."  *Margulies v. Upchurch*, 696 P.2d 1195, 1204 (Utah 1985).  To this end, "[t]he sanction of disqualification of counsel in litigation situations should be measured by the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial."  *Bodily v. Intermountain Health Care Corp.,* 649 F. Supp. 468, 478 (D. Utah 1986).  More specifically, "[t]he egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel are important considerations" for the court.  *Id.*  Further, "equitable considerations such as hardship to the other side and the stage of trial proceedings are relevant."  *Id.*

Van Cott's disqualification will not prejudice the defendants because ANT's motion is timely, the case is still in its infancy, and the factual and legal issues are not complicated.  Further, new counsel can step in and apprise itself of the relevant facts in a reasonable amount of time such that the litigation process will not be delayed.

> **B.     Van Cott Violated Rule 1.7 of the Utah Rules of Professional Conduct By Representing Both ANT and Flowering Scents Concurrently Without First Obtaining Written, Informed Consent.**

The Utah Rules of Professional Conduct provide certain safeguards for lawyers and their clients when an attorney undertakes to represent two parties in the same transaction or matter, thereby potentially giving rise to what is called a "concurrent conflict of interest."  "A concurrent

conflict of interest exists if," as in this situation, "[t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person . . ." U.R.P.C. 1.7(a)(2).  This case is a perfect example of a case where a concurrent conflict of interest arose when Van Cott undertook the simultaneous representation of both ANT and Flowering Scents in forming Sevea, and in subsequently representing Sevea.  ANT and Flowering Scents are two distinct parties coming together to form a new entity, Sevea.  Inevitably, and even in the best of circumstances, each party to a transaction such as this has its own interests and goals for the transaction, which is why it is dangerous for both parties to have the same legal representation.  In situations such as this, a lawyer "is likely to be materially limited in [his] ability to recommend or advocate all possible positions that each [party] might take because of the lawyer's duty of loyalty to the others.  The conflict in effect forecloses alternatives that would otherwise be available to the client."  Comment [8] to U.R.P.C. 1.7.

      Although Van Cott has denied that it represented Scott Nielson in the merger transaction, it made no mention of ANT in that denial.  ANT contends that the evidence is indisputable that Van Cott represented it in the merger transaction.  To the extent that Van Cott denies that it represented ANT or that it had an express representation agreement with ANT, it is clear that at the very least, there is an implied attorney-client relationship between Van Cott and ANT.  ANT reasonably believed that Van Cott represented it in the merger transaction and Van Cott's attorneys acted as if they represented ANT.  Courts have consistently held that "[a]n attorney-client relationship exists when the client reasonably believes the attorney represents the client's legal interests."  *Roderick v. Ricks*, 54 P.3d 1119, 1125 (Utah 2002).  Van Cott's

communications with ANT were always couched in terms of an attorney-client relationship.  Van Cott's attorneys advised ANT on several different aspects of the merger transaction, including, but not limited to; tax implications, intellectual property, employment agreements, and other business issues.  It was, therefore, reasonable for ANT to believe that Van Cott represented its interests in the merger transaction.

The fact that Mr. Macris, a managing member of Flowering Scents and officer of Sevea, recommended that Van Cott represent ANT, Flowering Scents, and Sevea is not unimportant.  Mr. Macris had the initial contact with Van Cott and he told ANT that it was necessary to use Van Cott so that the deal could be expedited.  *See* Nielson Aff (Ex. B).  Mr. Macris, in essence, simply would not hear of any other law firm representing ANT and Flowering Scents in this transaction…it wasn't even up for discussion.  ANT's should not be punished for trusting Mr. Macris and making the mistake of allowing Van Cott to represent its interests.   Indeed, Van Cott's failure to apprise ANT of the potential conflict is what this Court should sanction through disqualification.

Even with the inherent risks of concurrent representation, a lawyer can still represent both parties if, among other things, "each client gives informed consent, confirmed in writing." *Id.* at 1.7(b)(4).  Informed consent is imperative in concurrent conflict situations because clients make the decision, with all of the relevant information at hand, to move forward even though there may be potential conflicts.  It is for that reason that "[w]hen representation of multiple clients in a single matter is undertaken," the information provided to the clients when obtaining informed consent "must include the implications of the common representation, including possible effects

on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved." Comment [18] to U.R.P.C. 1.7.

Van Cott never explained the implications, advantages, and/or risks of its concurrent representation of ANT and Flowering Scents in the ACA and PPM to the parties, and it certainly never obtained written informed consent for such representation. ANT openly discussed various concerns, delivered documents, and provided other sensitive information to Van Cott that are only reserved for attorney-client relationships.[1] ANT also sought legal advice from John Snow, James Farmer, and Ruth Hawe regarding the ACA, PPM, and the tax implications of the merger transaction. Now ANT finds itself in litigation with its former attorneys on the other side. Not surprisingly, ANT now questions Van Cott's loyalty to its interests during the negotiations with Flowering Scents, and later, Sevea. Van Cott's violation of Rule 1.7 of the Utah Rules of Professional Conduct mandates its disqualification from representing the defendants in this lawsuit. To the extent, however, that the Court does not find this violation compelling, Van Cott has also violated its duty to ANT pursuant to Rule 1.9 of the Utah Rules of Professional Conduct.

      **C.**    **Van Cott Violated Rule 1.9 of the Utah Rules of Professional Conduct By Representing Flowering Scents in a Substantially Related Matter in Which Flowering Scents' Interests are Materially Adverse to ANT's.**

Rule 1.9 of the Utah Rules of Professional Conduct allows disqualification of an attorney who sues a former client in two situations. "First, Rule 1.9(a) states that an attorney may not represent a client against a former client in matters that are 'substantially factually related.'"

---

[1] Van Cott and Sevea have control over ANT's corporate records and have thus far refused to return them to ANT's counsel.

*Houghton*, 962 P.2d at 61. "Second, Rule 1.9(b) provides that an attorney may not use information relating to the representation of a former client to the disadvantage of that client." *Id., see also Bodily,* 649 F. Supp. at 474. The purpose of this rule "is to assure that the confidentiality and loyalty owed to the client is not compromised…" *Poly Software Int'l, Inc. v. Su,* 880 F. Supp. 1487, 1493 (D. Utah 1995). Van Cott has indisputably violated both aspects of Rule 1.9.

In order to establish "substantiality," there must be "a distinct, factual link between the former and present representations." *Houghton,* 962 P.2d at 62. Indeed, "'[s]*ubstantiality* is present if the factual contexts of the two representations are similar or related.'" *Bodily,* 649 F. Supp. at 474. Finally, "[s]o long as there are substantial factual threads connecting the two matters, the criteria of Rule 1.9 are met." *Poly Software,* 880 F. Supp. at 1492. ANT is not required, however, to prove that "confidences were [] imparted to" Van Cott in order to prove that one matter is substantially related to another. *Coles,* 973 F. Supp. at 974 (citation omitted). The facts relevant to Van Cott's original representation of ANT, Flowering Scents, and Sevea are substantially related to this lawsuit and the Flowering Scents Litigation because ANT is suing Flowering Scents, Sevea, and others for various breaches and torts connected with the ACA and PPM. Likewise, Flowering Scents is suing Scott Nielson, ANT, and others in connection with the ACA and PPM. There is, therefore, a substantial relationship between Van Cott's original representation of ANT and the litigation now surrounding those transactions.

Courts have recognized that "[a]llowing later adverse representation when the former client's disclosures might be used against him could inhibit the free exchange of information between attorney and client which our legal system presupposes." *Houghton*, 962 P.2d at 62

(citation omitted). Once substantiality has been proved, therefore, an irrebuttable "presumption arises that a client has indeed revealed facts to the attorney that require his disqualification." *Bodily,* 649 F. Supp. at 474; *see also Houghton,* 962 P.2d at 62. Notwithstanding the irrebuttable presumption, ANT can prove that it has given Van Cott sensitive, privileged information that gives Flowering Scents an unfair advantage in this case and the Flowering Scents Litigation. Van Cott has access to privileged and confidential information provided by ANT such as financial information, intellectual property, and other sensitive business information. Such information could be used to ANT's detriment in this case and in the Flowering Scents Litigation. Indeed, Van Cott's access to ANT's financial information alone is sufficient to disqualify Van Cott from representing the defendants in this case because "the premature possession of such information could well have substantial impact on settlement proposals and discussions and on trial strategy." *Margulies,* 696 P.2d at 1202.

      D.      **Van Cott Should Be Disqualified from Representing Defendants in Order to Avoid the Appearance of Impropriety and to Preserve the Integrity of the Bar.**

It is indisputable that "the undivided loyalty owed to a client is of paramount importance." *British Airways, PLC v. Port Auth. of N.Y. and N.J.,* 862 F. Supp. 889, 899 (E.D.N.Y. 1994). It is this duty of loyalty that is potentially most affected when an attorney violates his duties to a former client. The Utah Supreme Court captured this sentiment best in *In re Hansen*:

> The practice of law is a profession whose members are granted a special privilege of holding themselves out as having the education, the skills and the integrity to give help and guidance to others in their affairs… This includes that the attorney will become unreservedly identified with his client's interests and protect his rights. It means not only in dealing with the client's

> adversary, but also that the attorney will adhere to the ideals of
> honesty and fidelity with the client himself; and that he will not use
> his position to take any unfair advantage of the special confidence
> which the client is entitled to repose in him.

*In re Hansen,* 586 P.2d 413, 416 (Utah 1978).  Further, "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important a consideration that" courts "may disqualify an attorney for failing to avoid even the appearance of impropriety."  *International Bus. Mach. Corp. v. Levin*, 579 F.2d 271, 283 (3rd Cir. 1978).  Surely the public would find it disconcerting at the very least if Van Cott is allowed to sue its former client, ANT, in a case that is substantially related to its former representation.  Because "society's perception of the integrity of our legal system may be as important as the reality, since it is the perception that engenders public confidence that justice will be dispensed," Van Cott should be disqualified from representing defendants in this case.  *Margulies*, 696 P.2d at 1204.

      **E.**      **Van Cott's Disqualification Will Not Prejudice Defendants.**

Courts carefully weigh the evidence presented in Motions to Disqualify because of the potential prejudice to the non-moving party of being separated from its counsel of choice.  That said, a party's right to chose its counsel is not absolute, and courts will disqualify counsel for the reasons set forth in this memorandum.  Further, courts also look at whether or not disqualifying counsel will delay the litigation.  ANT brought this motion early in the litigation process, indeed less than a week after it filed its complaint against Flowering Scents, Sevea, and others.  The legal issues are not complicated and the facts are clear.  Defendants should be able to find new counsel without any trouble.  Thus, ANT's motion is timely and it will not needlessly delay the litigation or "impair[] the efficient administration of justice."  *Bodily*, 649 F. Supp. at 478.  ANT

therefore requests that this Court give Defendants one week to find new counsel, at which time this Court will reschedule the hearing on ANT's Motion for Preliminary Injunction at the Court's earliest convenience.

## CONCLUSION

Based on the foregoing authorities, Van Cott should be disqualified from representing defendants in this lawsuit.  Here, Van Cott's own actions undeniably demonstrate that it has improperly undertaken to represent both ANT and Flowering Scents without first obtaining informed, written consent.  Further, Van Cott has now sued ANT in a substantially related matter that is materially adverse to ANT's interests without obtaining ANT's informed, written consent.

WHEREFORE, ANT respectfully moves the Court for an Order disqualifying Van Cott from representing any of the defendants in this matter as a result of Van Cott's clear conflict of interest.

DATED this 31st day of July 2006.

HOLLAND & HART LLP

/s/ Jennifer L. Lange_____
Brent E. Johnson
Jennifer L. Lange
Robert S. Fox
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 31, 2006 I served a copy of the foregoing document to the following by

☒ U.S. Mail, postage prepaid
☐ Hand Delivery
☐ Fax

Sevea International, Inc.
c/o Scott Nielson—Registered Agent
1076 Walburk Ave.
Layton, UT 84040

Craig Gifford
7562 South 2480 West
West Jordan, UT 84084

Christina McNally
7204 W. Washington Ave.
Las Vegas, NV 89128

Flowering Scents, LLC
c/o  Christina McNally:  Registered Agent
7204 W. Washington Ave.
Las Vegas, NV 89128

Michael Macris
508 Carlton Kay Place
Las Vegas, NV 89144

and served by hand-delivery to:

John A. Snow
James R. Farmer
VanCott, Bagley, Cornwall & McCarthy
50 South Main Street, Suite 1600
Salt Lake Cityh, Utah 84145

/s/ Teri L. Jones_____

3584657_1.DOC

## LIST OF EXHIBITS

Exhibit A:     Asset Contribution Agreement

Exhibit B:     Affidavit of Scott Nielson

Exhibit C:     Confidential Private Placement Memorandum

Exhibit D:     Letter to Matt Horlacher from James Farmer

Exhibit E:     Letter to Matt Horlacher from John Snow

Exhibit F:     Letter to John Snow from Brent Johnson