# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **ARTIFICIAL NAIL TECHNOLOGIES, INC.**, a Utah corporation and **TRUE FIT NAILS, LLC** a Utah limited liability company;<br><br>      **Plaintiffs,**<br><br>vs.<br><br>**FLOWERING SCENTS, LLC**, a Nevada limited liability company; **SEVEA INTERNATIONAL, INC.**, a Nevada corporation; **MICHAEL MACRIS**, an individual; **CHRISTINA MCNALLY**, an individual; and **CRAIG GIFFORD**, an individual;<br><br>      **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:06CV609DAK |

   This matter is before the court on Plaintiff Artificial Nail Technologies, Inc.'s ("ANT") Motion for Injunctive Relief and Defendant Craig Gifford's Motion for Preliminary Injunction. The court held a hearing on the motions on July 9, 2008. At the hearing, ANT was represented by Matt C. Osborne, Defendants Flowering Scents, LLC, Michael Macris and Christina McNally were represented by J. Michael Hansen, and Defendant Craig Gifford was represented by Jared L. Bramwell.

   ANT seeks a preliminary injunction (1) requiring any parties to this action, including their attorneys, agents, and representatives, to return all of ANT's assets and intellectual property in compliance with the court's Writ of Replevin and (2) enjoining the Third Judicial District Court

of Utah from enforcing the portions of its Preliminary Injunction Order and Order re: Civil Contempt which ANT claim's is in conflict with this Court's Writ of Restitution.

Similarly, Gifford's Motion for Preliminary Injunction seeks an order enjoining the Third Judicial District Court of Salt Lake County from enforcement of its Preliminary Injunction issued on May 4, 2007, and its December 19, 2007 Order re: Civil Contempt. Gifford contends that these state court orders conflict with this court's Writ of Replevin.

## BACKGROUND

In early 2006, ANT negotiated with Flowering Scents ("FS"), a multi-level marketing business that claimed to possess a distributor base that could market ANT's artificial nails. ANT and FS entered into an Asset Contribution Agreement ("ACA"), wherein FS and ANT agreed to contribute substantially all of their assets to form a new entity, Sevea, in return for equity in Sevea. ANT was to contribute its intellectual property in the form of the patents and processes, as well as its equipment and physical plant to the new Sevea joint venture. Both FS and ANT were to receive shares of stock in return for contribution of their assets.

ANT claims in this lawsuit that despite entering into the ACA, no contribution or exchange of stock took place among ANT, FS and Sevea as provided in the ACA. Specifically, ANT claims that it never received any shares of Sevea stock or other consideration for its assets which caused the ACA to terminate pursuant to Section 7.3. However, Sevea seized and retained control of ANT's facility and assets.

In September 2006, ANT brought a motion for preliminary injunction and a writ of replevin. This court issued an order stating that ANT had not met its burden for a preliminary injunction at that stage and allowed for a period of expedited discovery. The court also found that ANT's motion for a writ of replevin was mostly moot because Defendants agreed at the

hearing to a return of ANT's equipment. The order did not specifically address the intellectual property ANT sought returned in its motion for a writ of replevin. After the court's order, Defendants returned a majority of ANT's equipment to it. But ANT claimed that Defendants retained some of its equipment, its patents and patent applications, and that Michael Macris told Craig Gifford to copy ANT's software before returning it. ANT then moved for a Writ of Replevin, seeking the remaining property that had not been turned over to it. This court entered a Writ of Replevin ordering the remaining property be returned to ANT.

One of the Defendants to this action, Michael Macris, a Director and shareholder in Sevea, sued another Defendant to this action, Jerry Saxton, Sevea's CEO, in state court. Macris claimed that Saxton had improperly taken Sevea property. Saxton claims that he moved the assets from Sevea's facility in an effort to protect them and prevent Macris from commencing bankruptcy or moving the assets out of state. The state court issued a preliminary injunction in favor of Macris requiring Saxton to return the property to Sevea's facility. The state court, however, recognized that its order did not determine or impact the issues regarding ownership of the property between ANT and Sevea in this action.

In the state court action, Saxton and Gifford failed to turn over property to Sevea, and the court issued an order finding them in contempt. The state court ordered them to comply with its orders. Again the court noted that it was not determining the rights of ANT and that the Custodian for Sevea would need to comply with this court's Writ of Replevin.

In July 2007, the state court appointed a Custodian to operate and manage Sevea International. The State court has also ordered that property be turned over to Sevea. The alleged conflict appears to be that ANT believes that the property being ordered in State court to be turned over to Sevea's Custodian is property that should be turned over to ANT. Gifford,

argues that he cannot comply with the court's Writ of Replevin without violating the State court injunction.

The state court, however, has stated in several instances that it does not intend to be in conflict with this court's Writ of Replevin. The state court has made a point of explaining that ANT is not a party to the state court action, and the court is not making any findings as to whether property belongs to Sevea or ANT–that is the issue in this case. The only findings in state court are between Sevea and the other parties to that state court action. The Custodian has also filed a statement with respect to these motions for preliminary injunction stating that he will comply with the orders of this court regarding the property.

## DISCUSSION

ANT contends that this court's Writ of Replevin and the State court's orders have caused confusion and the parties have failed to turn over property in accordance with the court's Writ of Replevin. Gifford's Motion for Preliminary Injunction parallels ANT's motion in most respects. Gifford, however, claims that he believes that he would have to violate this court's Writ of Replevin to comply with the State court's orders. Gifford claims that he has been attempting to secure ANT property until the legal issues were resolved, but he was found in contempt by the State court. Therefore, Gifford believes the need for clarification of their obligations under the conflicting orders is immediate. Defendants state that what has given rise to the need for injunctive relief is Gifford's and Saxton's failure to comply with this court's Writ of Replevin. Defendants claim there is no real conflict between the orders.

A fair reading of Judge Faust's orders and statements show that they are not in conflict with this court's orders. The state court specifically stated that its orders did not apply to ANT's rights to the property, the Writ of Replevin needed to be followed, and that the Custodian for

Sevea needed to comply with both courts' orders.  The state court was merely making rulings as to the property and parties before it.  Because ANT is not a party to the state court action, the state court emphasized that the division of property between ANT and Sevea would have to occur in this court.

There is no basis for Gifford to retain property.  Nothing in either court's order gives Gifford the right to "safeguard" ANT property.  If Gifford has any question as to whether the property belongs to Sevea or ANT, he should turn it over to the Custodian in accordance with the State court's order, and the Custodian will determine whether it has an obligation to turn the property over to ANT.  The Custodian has accounting and business records to aid in its determination. To the extent ANT wants to make a claim for property being held by the Custodian, it can proceed with such a claim in this action.

Although ANT relied on the All Writs Act, 28 U.S.C. § 1651, and the "Anti-Injunction Act," 28 U.S.C § 2283, in its written memorandum, at the hearing on the motions, ANT appealed more to the court's inherent power to issue an order specifying the party's rights.  These statutes do not provide ANT or Gifford with the relief they request, and the court finds that these statutes need not and should not be invoked in this instance.  ANT seeks an injunction requiring any party to this action to return all of ANT's assets and intellectual property to it in compliance with the Court's Writ of Replevin.  All of the parties to this action already have an obligation to comply with this Court's Writ of Replevin.

In addition, there is no need or grounds for enjoining the State court.  The State court has recognized that this court is determining the ownership, use, and possession of assets as between Sevea and ANT.  These assets are largely items or software used to manufacture nails.  The Custodian is under an obligation to comply with both courts' orders.  The Custodian, therefore,

must maintain possession of any equipment to which ANT may claim ownership.  He shall not sell any of these items or software used in the manufacturing of nails prior to the conclusion of this case.

ANT, however, also has a duty to make the Custodian aware of the property to which it claims ownership.  If there is a dispute between ANT and the Custodian, ANT must timely seek in this court a resolution or determination of the ownership as to such disputed property.

This court finds no basis for enjoining the State court from action or for requiring the State court to stay its proceedings.  The parties to both cases are under an obligation to move their cases forward.  The parties in this case have done little to move this case along.  It is inappropriate to fault the State court for proceeding to trial while little, if anything, is occurring in this action.  If the State court case is ready for trial, this court has no basis for precluding that trial from happening.  This court concludes that injunctive relief would be inappropriate.

## CONCLUSION

Accordingly, the court denies ANT's Motion for Injunctive Relief and Gifford's Motion for Preliminary Injunction.

DATED this 17th day of July, 2008.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge