EX. 63

FILED
U.S. DISTRICT COURT

2009 MAY -8 P 2:55

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ARTIFICIAL NAIL TECHNOLOGIES, INC., a Utah corporation and TRUE FIT NAILS, LLC, a Utah limited liability company,<br><br>    Plaintiffs,<br>vs.<br><br>FLOWERING SCENTS, LLC, a Nevada limited liability company; SEVEA INTERNATIONAL, INC., a Nevada corporation; MICHAEL MACRIS, an individual; CHRISTINA MCNALLY, an individual and CRAIG GIFFORD, an individual,<br><br>    Defendants. | FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON ANT'S MOTION FOR WRIT OF REPLEVIN<br><br><br><br>Civil No. 2:06CV609DAK<br><br>Honorable Dale A. Kimball |

On June 15, 2007, this Court heard oral argument and received evidence on the Motion for Writ of Replevin filed by plaintiff Artificial Nail Technologies, Inc. ("ANT"). ANT was represented by Matt C. Osborne, Esq. Defendants Flowering Scents, LLC, Michael Macris and Christina McNally were represented by J. Michael Hansen, Esq.[1] Defendant Craig Gifford and counterclaim plaintiff Jerry Saxton were represented by Sean N. Egan, Esq.

---

[1] Mr. Hansen also purported to appear for defendant Sevea International, Inc. ("Sevea"). The Court notes that Mr. Hansen did not formally enter an appearance on behalf of Sevea as required by DUCivR 83-1.3(a). In addition, this appearance was objected to by counsel for Jerry Saxton, a shareholder and director of Sevea. The Court did not, and does not here, rule on that objection.

The Court received documentary evidence submitted by both ANT and Michael Macris. The Court also heard testimony from Craig Gifford, Michael Macris and ANT principal Justin Williams. Having considered this testimony and the documents presented and having also considered the supplemental pleadings submitted by the parties, the Court hereby makes the following Findings of Fact, Conclusions of Law and Order:

## FINDINGS OF FACT

1. ANT is a company that was formed to promote the development, manufacture and sale of artificial nails and related products using methods and processes created by ANT principals Dr. Gifford and Scott Nielson.

2. At least some of the processes and methodologies employed by ANT were the subject of patents obtained by Craig Gifford as well as patents pending submitted by both Craig Gifford and Scott Nielson.

3. The software used to manufacture nails, the Eclispe/NailBuilder Software, was developed by ANT personnel, including Craig Gifford and Scott Nielson, and was owned by ANT prior to the execution of the Asset Contribution Agreement ("ACA") in March, 2006.

4. ANT has developed and acquired at its expense certain equipment to manufacture artificial nails, including without limitation a finger tray mold and a nail tray stand mold. ANT owned these molds prior to the ACA.

5. Beginning in February, 2006, ANT entered into negotiations with Flowering Scents, LLC, an entity which sold health and beauty aides through a multilevel marketing structure. Defendant Michael Macris is a manager of Flowering Scents.

2

6.   Throughout February of 2006, Flowering Scents and ANT explored the possibility of a merger. To that end, the parties entered into an Asset Contribution Agreement ("ACA") in March, 2006. Under this agreement, ANT agreed to contribute all the assets it used to manufacture artificial nails and related products including, but not limited to, all its physical equipment and the Eclipse/Nail Builder software and other related intellectual property. In exchange for this, ANT was to receive 10 million shares of a new company that was formed to be the product of the Flowering Scents and ANT merger. This new company was called Sevea International, Inc. ("Sevea").

7.   Pursuant to the terms of the ACA, ANT delivered to Sevea physical and constructive possession of its assets, including the intellectual property used to manufacture artificial nail products. The items delivered were identified on Exhibit B to the ACA. Sevea continued manufacturing artificial nails using all of ANT's resources

8.   It is undisputed that ANT has never received 10 million shares of Sevea stock required to be issued to ANT for the contribution of its assets to Sevea.

9.   During the Spring and Summer of 2006, Sevea continued utilizing the ANT intellectual property to manufacture artificial nails. Sevea also placed orders for equipment to improve the manufacturing process, specifically a welder and a laser. This equipment had been identified and designed by ANT as necessary upgrades to the manufacturing process prior to the execution of the ACA.

10. The welder incorporated a fixture appliance designed by ANT for the express purpose of manufacturing artificial nails. Without this fixture appliance, the welder cannot manufacture ANT artificial nails.

11. The laser contained a laser head that ANT selected from numerous others supplied by the manufacturer based on factors and considerations that ANT believed were necessary to enhance its nail manufacturing process. Without this laser head, the laser cannot manufacture ANT artificial nails.

12. Sevea purchased the welder and laser in the Summer of 2006 and immediately used them to continue the manufacture of artificial nails using ANT's intellectual property, including ANT's Eclipse/Nail Builder software.

13. On July 25, 2006, ANT commenced this action against Sevea, Michael Macris, Christina McNally, Flowering Scents and Craig Gifford seeking an injunction to prevent Sevea from using ANT's assets, including its intellectual property to manufacture nails and seeking an immediate return of those assets.

14. On September 1, 2006, this Court heard oral argument on ANT's Motion for Preliminary Injunction and for Writ of Replevin. The Court denied both motions. With respect to the replevin motion, the Court determined that it was largely moot because Sevea had agreed to return to ANT's equipment.

15. On September 11, 2006, Sevea purchased two external hard drives and a program designed to copy software. Sevea used these materials to download and copy ANT's Eclipse/Nail Builder software and related software programs in their entirety. Sevea also

4

retrieved, and kept for itself, molds which were being held by ANT's vendors and which were used to make the artificial nails and related products. These molds were designed and owned by ANT and were subject to patents pending.

16. On or about September 14, 2006, ANT retrieved items made available by Sevea. However, Sevea continued manufacturing artificial nails utilizing the Eclipse/Nail Builder software, the fixture appliance designed by ANT, and the laser head specifically selected by ANT.

17. On November 22, 2006, ANT informed Sevea that it had not received the molds that it contributed under the ACA and demanded return of the items. Sevea ignored this request.

18. Beginning no later than December, 2006, Sevea's management fell into dispute about how best to manage and operate the company. Management was unable to resolve its internal differences. This dispute ultimately resulted in Sevea ceasing production of artificial nails. Thus, neither Sevea nor ANT are manufacturing artificial nails at this time.

19. The artificial nails manufactured by Sevea before September, 2006 were identical to those manufactured by ANT before execution of the ACA. The artificial nails manufactured by Sevea after September 1, 2006, were identical to the nails manufactured by ANT except that Sevea no longer utilized binding pockets to attach the artificial nail to the underlying nail.

20. The intellectual property, including patents, patents pending and other processes and methodologies used by ANT and Sevea to manufacture artificial nails and related products, are set forth in the ACA, including on Exhibit B, between Flowering Scents and ANT.

21. On or about January 9, 2007, one of Sevea's managers, Jerry Saxton, removed all of Sevea's assets as well as those ANT assets still in Sevea's possession, including ANT's Eclipse/Nail Builder software, from Sevea's facility in an attempt to produce artificial nails under a different entity. Sevea's other manager, Michael Macris, filed suit in state court and obtained an injunction against Saxton.

22. Michael Macris has expressed an interest in taking a copy of ANT's intellectual property, including the Eclipse/Nail Builder software, to India for production of artificial nails following completion of Sevea's winding up.

23. Macris also informed Gifford on January 9, 2007, that following resolution of the corporate dispute with Saxton, he intended to sell ANT's intellectual property to the highest bidder and pay Sevea's debts.

24. Sevea does not appear to have a business plan regarding production and sale of artificial nails and related products. Macris acknowledged under oath that the liquidation of the assets in the possession of Sevea was a possible course of action for Sevea.

25. The dispute regarding whether Sevea used or did not use ANT's equipment, including Macris' arguments that ANT's equipment was "junk" or not used because it was improved upon, is largely irrelevant because ANT seeks the equipment it contributed to Sevea. ANT's motion does not appear to be seeking equipment developed by Sevea. Therefore, Gifford's prior statements to counsel do not impact the determination before the court. Furthermore, Macris' argument suggests that a return of ANT's equipment would have little effect on Sevea.

## CONCLUSIONS OF LAW

1. ANT's Motion for Writ of Replevin is to be analyzed under Rules 64A and 64B of the Utah Rules of Civil Procedure. *See* Fed. R. Civ. P. 64.

2. ANT's Motion for Writ of Replevin does not seek the possession of property which are earnings or otherwise exempt from execution, Accordingly, ANT has satisfied U. R. Civ. P. 64A(c)(1).

3. ANT's Motion for Writ of Replevin is not brought to hinder, delay, or defraud any of the Defendants. Accordingly, ANT has satisfied U. R. Civ. P. 64A(c)(2).

4. ANT has established that it is likely to succeed on the merits of its claim because it is clear that Sevea continues to possess assets belonging to ANT which Sevea received as part of the failed ACA without payment of any consideration. Accordingly, ANT has satisfied U. R. Civ. P. 64A(c)(3).

5. ANT has established that the remedy of obtaining possession of its assets may not be available to ANT upon conclusion of this case. This is so because Sevea, acting through its managers and principal shareholders, has demonstrated a willingness to treat ANT's proprietary nail building assets as its own. For example, Saxton has moved ANT's assets without permission once, and Macris has expressed a willingness to sell ANT's assets once Sevea's corporate disputes are resolved whether by bankruptcy or corporate action. Thus, ANT has satisfied U. R. Civ. P. 64A(c)(10).

6. Prior to the ACA, ANT had an ownership or special interest in the equipment and intellectual property at issue. Indeed, there was significant evidence presented at the hearing on

7

ANT's replevin motion, that ANT either owns or has, both itself and through its principals, an interest in the patents and patents pending underlying the methodologies and processes ANT uses to manufacture artificial nails, particularly the Eclipse/Nail Builder software. Neither Gifford nor True Fit Nails has objected to ANT's replevin motion. Thus, ANT has satisfied U. R. Civ. P. 64A(c)(9).

7.  ANT has also presented sufficient evidence to establish that Sevea may leave Utah with ANT's assets with the intent to defraud ANT as creditor. Thus, ANT has satisfied U. R. Civ. P. 64A(c)(6). ANT could be construed a creditor given Sevea's failure to pay ANT consideration under the ACA.

8.  Finally, because Sevea is no longer producing artificial nails and Jerry Saxton has been enjoined by order of the state court from making nails, ANT's intellectual property and assets are sitting idle and are therefore likely to decline in value, especially the Eclipse/Nail Builder software. Also, if the assets are sold by any of the Defendants, they will obviously decline in value. Accordingly, ANT has satisfied U. R. Civ. P. 64A(c)(8).

9.  Likewise, the Court is satisfied that ANT would lose its remedy of regaining possession of the assets if they were sold by any of the Defendants. Accordingly, ANT has satisfied U. R. Civ. P. 64A(c)(10).

10.  The Court concludes that because of the findings of fact and conclusions of law herein, it necessarily follows that ANT has satisfied U. R. Civ. P. 64B.

## ORDER

1. ANT's Motion for a Writ of Replevin is hereby granted.

2. Sevea, Jerry Saxton, Craig Gifford, Michael Macris, Christina McNally and Flowering Scents are hereby ordered to return to ANT all items, including intellectual property, patents, patents pending and anything used by Sevea to manufacture artificial nails that was contributed to Sevea by ANT. This order expressly includes all copies of ANT's Eclipse/Nail Builder software and any variations or modifications thereof, ANT's molds, including the finger nail tray mold and the nail stand mold, and all of ANT's patents and patents pending files.

3. This order expressly excludes the welder and laser purchased by Sevea until the determination of ANT's Motion for Preliminary Injunction. Whether Sevea may use these items, in their current configuration, will be decided when ANT's Motion for Preliminary Injunction is heard on August 27, 2007.

DATED this 5th day of July, 2007.

BY THE COURT:

Dale A. Kimball,
United States District Judge

9